In the

# United States Court of Appeals
## For the Seventh Circuit

No. 18-1114

JESUS RUIZ,

*Petitioner-Appellant*,

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:16-cv-2521 — **Charles R. Norgle**, *Judge*.

On Petition for Rehearing and Rehearing En Banc

DECIDED AUGUST 4, 2021

Before SYKES, *Chief Judge*, EASTERBROOK, KANNE, ROVNER, WOOD, HAMILTON, BRENNAN, SCUDDER, ST. EVE, and KIRSCH, *Circuit Judges*.

SCUDDER, *Circuit Judge*. On consideration of the petition for rehearing and rehearing *en banc* filed by petitioner-appellant

on April 23, 2021, a majority of judges on the original panel voted to deny rehearing. A judge in regular active service requested a vote on the petition for rehearing *en banc*. A majority of judges[1] in regular active service voted to deny rehearing *en banc*. Judges Ilana Diamond Rovner, Diane P. Wood, and David F. Hamilton voted to grant rehearing *en banc*.

Accordingly, the petition for rehearing and rehearing *en banc* is DENIED.

---

[1] Judge Candace Jackson-Akiwumi did not participate in the consideration of this matter.

WOOD, *Circuit Judge*, dissenting from denial of rehearing en banc.

The question before the court in this case is one of great consequence: whether the harmless-error doctrine categorically bars a federal prisoner from showing that one count of his conviction is fundamentally flawed, solely because the sentence from that conviction is set to run consecutive to one or more life sentences on other counts. By answering this question in the affirmative, the majority in this case has taken a position that is flatly inconsistent with the Supreme Court's decision in *Sibron v. New York*, 392 U.S. 40 (1968). *Sibron* holds that courts' crystal balls are not perfect, and so we are not permitted to presume that a flawed conviction that would be subject to vacatur if it stood alone has no legally redressable consequence for a defendant simply because the conviction is consecutive to a life sentence. Rather, it establishes the contrary presumption: there *are* collateral consequences associated with *each* conviction in a criminal case.

My dissent from the panel opinion outlines several problems with the majority's analysis. See *Ruiz v. United States*, 990 F.3d 1025, 1035–41 (7th Cir. 2021) (Wood, J., dissenting). Key among these is its *de facto* application of the *concurrent* sentence doctrine to a *consecutive* sentence. In this statement, however, I wish to elaborate on three reasons why I believe this case is worth the attention of the full court, and failing that, the Supreme Court: the conflict with binding Supreme Court authority, the serious possibility of real-world consequences for Ruiz, and the far-reaching implications of the approach the majority has adopted for hundreds of similarly situated people.

For ease of reference, I begin with a brief recap of the facts. Petitioner Jesus Ruiz was sentenced to seven concurrent life sentences for hostage-taking and kidnapping resulting in death, plus a consecutive 45-year term for three firearms crimes under 18 U.S.C. § 924(c). At the time he committed those crimes, he had just turned 18 years old. In his motion attacking his sentence under 28 U.S.C. § 2255, Ruiz has argued compellingly that his firearms convictions must be vacated because they are no longer predicated on crimes of violence, given the Supreme Court's holding in *United States v. Davis*, 139 S. Ct. 2319 (2019). The district court declined to confront these arguments. Instead, it denied Ruiz's motion on harmless-error grounds, reasoning that, because Ruiz would still be subject to seven consecutive life sentences even if he prevailed on the firearms counts, his motion was of "no material consequence." On appeal, a majority of a panel of this court affirmed that result and endorsed that reasoning. It concluded that it is *impossible* for Ruiz to suffer any prejudice from the extra 45 years, and so any error relating to those convictions must be harmless.

The majority was wrong both as a matter of fact and as a matter of law. An error is not harmless if it may have a material effect on the movant's rights. See FED. R. CIV. P. 61; Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 12 (applicability of the Federal Rules of Civil Procedure). As I explain below, the error in Ruiz's firearms counts easily could have such an effect. And, contrary to the majority's unsupported assumption, Ruiz's situation is not an isolated case. Criminal judgments that include a life sentence on one or more counts and a consecutive sentence on additional counts are common.

Most importantly, the majority's opinion cannot be reconciled with *Sibron v. New York*, 392 U.S. 40 (1968). *Sibron* rejects "all inquiry into the actual existence of specific collateral consequences." *Id.* at 55. Instead, it instructs courts to presume that each conviction in a criminal judgment carries distinct collateral consequences.

The majority attempts to distinguish *Sibron* because the context was somewhat different, insofar as *Sibron* dealt with the question whether the case (though filed while the defendant was in custody) had become moot because of the petitioner's release. It reached the Supreme Court on direct appeal from New York's courts. The Supreme Court held that Sibron was entitled to pursue his challenge to the conviction because he faced collateral legal consequences from the underlying conviction. In so holding, it relied on its then-recent decision in *Carafas v. Lavallee*, 391 U.S. 234 (1968), a state prisoner's habeas corpus case. It thus was not drawing any line based on the difference between direct and collateral review. See *Sibron*, 392 U.S. at 51. And there is no meaningful difference between saying that a conviction doesn't matter because the person has now completed his sentence (*i.e.* the mootness argument) and saying that it doesn't matter because the person will die before the later sentence comes into effect. The latter is just an extreme form of anticipated mootness.

With a tweak or two, Ruiz's case illustrates the point of *Sibron*. Suppose, at the time Ruiz committed his crimes (1996), he had been just a few months *younger* than age 18, rather than a few months past his 18th birthday. At the time of Ruiz's convictions and sentencing, it was permissible to impose mandatory life-imprisonment sentences without possibility of parole on persons who committed their crimes before they turned 18.

Had this appeal reached us in 2010, the majority would have held that the 45-year consecutive sentences on the gun counts could never have any practical impact, and thus it would have declined to resolve a legal challenge to them. But that obviously would have been wrong: *Miller v. Alabama*, 567 U.S. 460 (2012), came along 26 years after the crimes and two years after the hypothetical 2010 appeal. *Miller* held that mandatory life imprisonment without parole for persons who committed their crimes before they turned 18 violates the Eighth Amendment, and the Supreme Court later made *Miller* retroactive to state collateral review proceedings. See *Montgomery v. Louisiana*, 577 U.S. 190 (2016). So, in my hypothetical, Ruiz would have been entitled to resentencing if he prevailed on his challenge to the convictions underlying the 45-year consecutive sentence. That is, he would have been entitled to have the sentences attached to his three firearms convictions (five years, 20 years, and 20 years, consecutive to one another), eliminated. If all three firearms counts were set aside, as Ruiz has argued should happen, that would erase his full consecutive 45-year sentences.

The majority is unmoved by this analogy, because the Supreme Court's *Miller* decision draws the line at 18 years of age. But there is nothing inevitable about that. *Miller* itself probably seemed unpredictable to the bench and bar back in 1996, when Ruiz committed his offenses. Yet now we have it. The majority speculates that there will be no more changes in the law that take age and maturity into account, and thus there is no realistic possibility that Ruiz can reap any benefit from his current challenge. That line of reasoning, however, is not only inconsistent with *Sibron*; it also makes factual assumptions that do not withstand analysis.

The tension between the majority's position and *Sibron* is well captured by the following passage in the Supreme Court's opinion:

> We cannot foretell what opportunities might present themselves in the future for the removal of other convictions from an individual's record. The question of the validity of a criminal conviction can arise in many contexts … and the sooner the issue is fully litigated the better for all concerned. It is always preferable to litigate a matter when it is directly and principally in dispute, rather than in a proceeding where it is collateral to the central controversy. Moreover, litigation is better conducted when the dispute is fresh and additional facts may, if necessary, be taken without a substantial risk that witnesses will die or memories fade. And it is far better to eliminate the source of a potential legal disability than to require the citizen to suffer the possibility of unjustified consequences of the disability itself for an indefinite period of time before he can secure adjudication of the State's right to impose it on the basis of some past action.

392 U.S. at 56–57. In short, the Supreme Court has instructed us to "get out of the prediction business" when it comes to the validity of a person's convictions. Each conviction must be assessed on its own. For Ruiz, this means that we not only can, but must, adjudicate his claim that three of his counts of conviction must be vacated because they do not qualify as crimes.

To the extent that this clear-cut rule from *Sibron* does not conclusively resolve this appeal, we may look to see whether collateral consequences from Ruiz's 45-year consecutive firearms offenses are possible. (And note that nothing in *Sibron*

would support a rule requiring those collateral consequences to be more likely than not.) The short answer is that they are easy to predict. For example, *Sibron* points to the use of a prior conviction to impeach in a future criminal trial. *Id.* at 55–56. This is certainly possible, as inmates are frequently tried for offenses they commit in prison. The majority implies that the reputational effect of Ruiz's firearms convictions pales in comparison to his unchallenged kidnapping convictions, but *Sibron* takes this reasoning off the table. As the Supreme Court put it, "[i]t is impossible for this Court to say at what point the number of convictions on a man's record renders his reputation irredeemable." *Id.* at 56. The possibility that Ruiz's firearms convictions might contribute some reputational harm is already enough.

And then there is the real possibility that future legal reforms might allow reconsideration of Ruiz's life sentences. The majority brushes this off as fanciful, but I respectfully disagree with that assessment. As discussed earlier, in 2012 the Court held in *Miller* that mandatory life imprisonment without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment. 567 U.S. 460. The Court justified this rule on the theory that offenders under the age of 18 have "diminished culpability" because of their "lack of maturity," "underdeveloped sense of responsibility," and character that is less "well formed," as compared with that of adults. *Id.* at 471.

*Miller* is part of a long line of cases recognizing that the Constitution demands different penal treatment for young offenders—usually those under the age of 18. See, *e.g.*, *Graham v. Florida*, 560 U.S. 48 (2010); *Roper v. Simmons*, 543 U.S. 551 (2005). As the *Miller* Court noted, these decisions are

grounded in science. Courts have paid heed to "developments in psychology and brain science [that] show fundamental differences between juvenile and adult minds" including the "parts of the brain involved in behavior control." *Miller*, 567 U.S. at 471–72 (quoting *Graham*, 560 U.S. at 68). But there is nothing magic about the age of 18, as other areas of the law demonstrate. Legislatures sometimes demand a higher age with presumptively more maturity: for instance, Congress has decreed that states are not entitled to receive federal highway funds unless they impose a minimum age of 21 for purchase and public possession of alcoholic beverages. See the 1984 National Minimum Drinking Age Act, 23 U.S.C. § 158.

For now, in the criminal law area courts are using the age of 18 as the relevant cut-off point, largely because of the scientific community's assessments regarding the length of the developmental period in the human brain. But that is an empirical conclusion, and it is one that is subject to change. Neurological science continues to advance. Indeed, the American Association on Intellectual and Developmental Disabilities (AAIDD), a respected organization whose work is often cited by the Supreme Court, now defines the end of the human intellectual development period as age 22, not age 18. See INTELLECTUAL DISABILITY: DEFINITION, DIAGNOSIS, CLASSIFICATION, AND SYSTEMS OF SUPPORTS 1, 13, 32 (12th ed. 2021). Federal law now uses the age of 22 for purposes of programs for people with developmental disabilities. See 42 U.S.C. 15002(8).

It does not require a wild leap of faith to imagine that a future Supreme Court might reconsider the line drawn in *Miller* and *Montgomery* and announce that mandatory life

imprisonment without possibility of parole violates the Eighth Amendment as applied to persons who committed crimes before the age of 19, or 20, or 21. Any of those would be transformative for Ruiz, who as I have stressed was just a few months past his 18th birthday when he committed these crimes. And if his life sentences were to become eligible for reexamination, Ruiz's consecutive 45-year sentence would take on immense practical significance. See *United States v. Cephus*, 684 F.3d 703, 710 (7th Cir. 2012).

Reasonable minds might disagree over how likely such a change is. But in the end, that debate is irrelevant. *Sibron* recognizes that courts are poorly positioned to guess what reforms might come about, and when. In 1996, few foresaw *Miller*. For that matter, many people did not predict the Fair Sentencing Act, 124 Stat. 2372, and the later First Step Act, 132 Stat. 5194, which taken together retroactively lowered many drug sentences. Comparable legislative changes could also affect Ruiz's life sentences, yet the government would be likely in that instance to resist a successive section 2255 motion, because successive motions that are not based on newly discovered evidence depend on a change in *constitutional* interpretation. See 28 U.S.C. § 2255(h)(2).

*Sibron* addressed and rejected that wait-and-see approach. The question is ripe for decision now; Ruiz has properly presented it; and he has made a compelling showing that the firearms convictions should be vacated. We should not dodge that last issue by trying to squeeze this into the harmless-error category, when the error is anything but harmless under the Supreme Court's cases.

The majority's last point is that this case does not deserve rehearing en banc because the fact pattern it presents is

unusual. With respect, nothing could be further from the truth. Criminal judgments that include a life sentence on one or more counts and a consecutive sentence on additional counts are common. Indeed, they are exceedingly prevalent in the context of section 924(c), because that statute *requires* that firearms convictions run consecutively to sentences on other counts. 18 U.S.C. § 924(c)(1)(D)(2).

According to the U.S. Sentencing Commission, in 2013 alone, judges sentenced 153 offenders to prison terms of life without parole. U.S. SENT'G COMM'N, LIFE SENTENCES IN THE FEDERAL SYSTEM (2015), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-projects-and-surveys/miscellaneous/20150226_Life_Sentences.pdf. Of these, almost 40% (around 60) were also found to have possessed a weapon in connection with their offense in violation of 18 U.S.C. § 924(c), mandating at least one sentence *consecutive* to their life term. *Id.* And this does not include the 168 other defendants from that year who received sentences that were so long that they had the practical effect of being a life sentence, nor does it include the 291 defendants sentenced to terms of incarceration longer than their life expectancy. To the extent that any of those defendants also committed firearms offenses under section 924(c)—and many undoubtedly did— they too would have been sentenced to terms *consecutive* to their *de facto* life sentences.

In short, Ruiz's circumstances are far from unique. He joins hundreds, if not thousands, of people who are now cut off from challenging their flawed section 924(c) convictions thanks to the majority's disregard of *Sibron*.

I therefore respectfully dissent from the denial of rehearing en banc.